UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America *ex rel.* <br> DAVID MIRANDA, | ) <br> ) <br> ) | |
| Petitioner, | ) | Case No. 03 C 7309 |
| v. | ) <br> ) | |
| DEIRDRE BATTAGLIA[1], Warden, Stateville <br> Correctional Center, | ) <br> ) <br> ) | Judge Joan B. Gottschall |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner David Miranda brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 19, 1996, Miranda was found guilty in the Circuit Court of Cook County, Illinois of the 1985 murder of Jose Aroca, as well as separate counts of attempted murder and armed robbery. Petitioner was sentenced to concurrent 70-year, 20-year, and 15-year prison terms. Petitioner appealed his conviction, and the Illinois Appellate Court remanded for an evidentiary hearing on petitioner's claim that the jury was not properly empaneled. On remand, the trial court found that the jury was properly empaneled and that the verdict was sound. The appellate court affirmed. The Illinois Supreme Court denied petitioner's petition for leave to appeal ("PLA"). Petitioner then filed a petition for collateral relief under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, which was denied. The appellate court affirmed and the Illinois Supreme Court denied the PLA.

On October 15, 2003, Miranda filed a federal habeas petition. Respondent answered on

---

[1] The court notes that the warden of Stateville Correctional Center is now Deirdre Battaglia. The court will amend the caption to reflect this change. *See* Rule 2, Rules Governing Habeas Corpus Cases Under Section 2254.

February 17, 2004. After reviewing the pleadings, the court appointed counsel on June 2, 2006. On November 2, 2006, the court granted Miranda's motion for funds to hire an investigator for the purpose of locating Lazaro Gonzalez and securing an affidavit from him. After reconsidering the request, the court denied petitioner's motion for funds because it would not be permitted, under controlling Seventh Circuit caselaw and 28 U.S.C. § 2254(e)(2), to consider any new affidavit in light of Miranda's failure to show diligence in developing the factual basis of his claim in the state courts. *See* 7/9/07 Order at 4-7. On August 10, 2007, petitioner filed an amended § 2254 petition, raising the following claims: (1) trial counsel was ineffective for improperly coercing petitioner not to testify at trial; (2) trial counsel was ineffective for failing to investigate Lazaro Gonzalez, whose testimony would have supported an intoxication defense; (3) trial counsel was ineffective for failing to object to testimony concerning Gonzalez's statement to police after the offense; (4) trial counsel was ineffective for failing to object to the trial court's decision to admit the butcher knife into evidence; (5) trial counsel was ineffective for failing to move the trial court to vacate the attempted armed robbery conviction as a lesser included offense of first-degree murder; (6) petitioner was denied his Fifth Amendment right to testify because his attorney coerced him not to testify, rendering any waiver of that right not knowing and voluntary; (7) petitioner's 70-year sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (8) Miranda's waiver of his right to have his sentence determined by a jury was not knowing or voluntary. On September 19, 2007, respondent answered.

       For the reasons that follow, Miranda's petition is denied.

**I.   BACKGROUND**[2]

Michael Tomasovich, a retired Chicago police officer, testified that on December 6, 1985, at approximately 10:30 p.m., he responded to a call from 207 North Campbell in Chicago. Upon his arrival, he observed a pool of blood and a butcher knife in the snow. Following the trail of blood, Tomasovich found one man covered in blood, lying in front of a store, and another man lying in a pool of blood inside an adjacent meat market. The first man, Lazaro Gonzalez, survived, while the second man, Jose Aroca, died at the scene. Two .45-caliber bullets were recovered from the crime scene.

Alejandro Rodriguez testified that he moved in with Miranda in the fall of 1985 and stated that Miranda owned a .45-caliber revolver. Both Miranda and Gonzalez worked for Aroca at Aroca's meat market. On December 6, 1985, Rodriguez, Aroca, Gonzalez, Miranda and Jose Velez gathered at Aroca's meat market to celebrate the opening of Aroca's new business. All of the men were drinking scotch. Around 10:00 p.m., Aroca indicated that it was time to leave, at which point Miranda left the store and said, "I'll be right back." Rodriguez testified that Miranda returned with a gun and said, "[N]obody is going to leave," and told Aroca to give him the money in the safe. Aroca laughed and said that Miranda was joking. Miranda then shot Gonzalez several times. Miranda again ordered Aroca to open the safe and give him the money. Aroca bent down as if to open the safe, but stood up again and walked to the window. Miranda warned Aroca not to walk away from him and shot Aroca in the back. When Aroca fell to the ground, Miranda shot him again

---

[2] The court takes its facts from the Illinois Appellate Court's recitation of facts in *People v. Miranda*, No. 1-00-3461 (Ill. App. Ct. Oct. 31, 2002). *Whitman v. Bartow*, 434 F.3d 968, 969 (7th Cir. 2006) (state court factual determinations are presumed correct and can only be rebutted with clear and convincing evidence).

in the head.

Rodriguez then said, "[Y]ou just killed a man. You killed him." Miranda replied, "[Y]ou got to help me, you [sic] my friend." Miranda grabbed a knife from the butcher block, gave it to Rodriguez and said, "help me." Holding Gonzalez by the arm, Rodriguez walked to the alley in back of the store and threw the knife in the garage. Miranda soon found the men and asked for the knife. Rodriguez told Miranda where he had thrown it and then walked Gonzalez toward nearby houses looking for assistance. After Miranda followed them and beat Gonzalez about the face, Rodriguez yelled for help and left Gonzalez. When Miranda asked Rodriguez to walk with him, Rodriguez replied, "[Y]ou walk your way and I walk my way." At that point, Miranda left and Rodriguez walked to a bar. He later recounted the incident to the police. Rodriguez testified that while everyone was drinking during the evening, Miranda did not appear to be intoxicated. The State admitted People's Exhibit 19, the butcher knife Rodriguez mentioned, into evidence over defense objection.

Velez testified that he and Aroca were going to open a fish market. On December 6, 1985, Velez and Aroca went to the bank and cashed a $10,000 check. Around 6:00 p.m., the two men returned to the meat market where Miranda, Rodriguez, and Gonzalez were present. Aroca waived the bundle of money in the air before placing it into the safe. The men began drinking a one liter bottle of scotch. When Velez left approximately one hour later, none of the men appeared intoxicated.

Toxicology reports revealed that both Aroca and Gonzalez had elevated blood alcohol levels. Detective Jerome Bogucki of the Chicago police department testified that when he interviewed Rodriguez on the night of the murder, Rodriguez was highly emotional and very upset. The defense

questioned him about inconsistencies between his recorded report of Rodriguez's statement on the night of the crime and Rodriguez's trial testimony. Rodriguez did not tell Bogucki that Miranda ordered Aroca to open the safe, that Miranda shot Aroca in the head, or that Miranda handed Rodriguez a knife. However, Rodriguez told Bogucki that Miranda told Aroca to "open up and give me what you got."

Miranda was arrested in Texas and extradited to Illinois in January 1994. Bogucki stated that, at the time of trial, Gonzalez was in an Immigration and Naturalization camp in Louisiana.

## II. ANALYSIS

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 367 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407. The state court's application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (state court decision must lie "well outside

the boundaries of permissible differences of opinion").

Before a federal court will consider a habeas corpus petition, a petitioner must satisfy several requirements, including the exhaustion of state remedies and the avoidance of procedural default. Procedural default refers primarily to two situations. The first occurs when the petitioner presents federal claims in his habeas petition that he did not "fairly present" to the state courts, thereby depriving the state courts of the first opportunity to address the claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). A petitioner's failure to fairly present each habeas claim to the state's highest court in the time and manner required leads to a default of the claim, barring the federal court from reviewing the claim's merits. *Id.* at 848. The second situation in which procedural default occurs is when the state court bases its judgment on a state procedural rule, where such grounds are "independent of the federal question and adequate to support the judgment." *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999). A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**B.     Untimely Claims**

Respondent argues that certain claims, appearing for the first time in Miranda's amended petition, are untimely as they do not relate back to Miranda's original *pro se* petition. It is undisputed that Miranda's original petition was filed within the one-year statute of limitations and that any new claims (i.e., those which do not relate back) in the amended petition were filed beyond the one-year statute of limitations. There are two claims in the amended petition that respondent argues are untimely: (1) trial counsel was ineffective for failing to object to Detective Bogucki's

testimony concerning Gonzalez's police statement; and (2) Miranda did not knowingly and voluntarily waive his right to jury sentencing.

Federal Rule of Civil Procedure 15 governs amendments to habeas corpus petitions. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). Under Rule 15(c)(2), an amendment to a pleading that is made after the limitations period has run relates back to the date of the original pleading if the claims in the amendment arise from the same conduct, transaction, or occurrence as in the original pleading. It is insufficient, in the habeas context, that the new claims relate to the same underlying criminal trial as the original claims; rather, to relate back, the new claims must be tied to the same core of operative facts as the original claims. *Id.* at 664 & n.7.

In *Mayle*, the Supreme Court gave some examples of habeas claims that relate to each other:

> For example, in *Mandacina v. United States,* 328 F.3d 995, 1000-1001 (8th Cir. 2003), the original petition alleged violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in *Woodward v. Williams,* 263 F.3d 1135, 1142 (10th Cir. 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. See also 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], p. 15-82 (3d ed. 2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").

545 U.S. at 664 n.7. Thus, new claims relate back only if they are based on the same facts as the original claim(s). *See, e.g.*, *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance[.]").

In his original petition, Miranda argued that he was denied a fair trial and effective assistance of counsel because he was denied his right to confront witnesses. Pet. at 5. This claim appears to be factually related to petitioner's current claim that his counsel was ineffective for failing to object to Detective Bogucki's testimony concerning Gonzalez's statement to the police. As a result, this claim is timely and will be considered by the court. However, petitioner's claim that he did not knowingly and voluntarily waive his right to jury sentencing is distinct from those in Miranda's original petition. Therefore, it does not relate back, and is untimely.[3]

### C. Procedural Default

#### 1. Claim I.C

In Claim I.C, petitioner argues that trial counsel was ineffective for failing to investigate and call Lazaro Gonzalez as a witness at trial. Petitioner raised this issue in his post-conviction petition, but the trial court rejected it because petitioner failed to attach an affidavit from Gonzalez to his petition. The Illinois Appellate Court affirmed the trial court's dismissal on this procedural ground. *State v. Miranda*, No. 1-00-3461, slip op. at 5-6 (Ill. App. Ct. Oct. 31, 2002). Illinois law requires that an ineffectiveness claim involving counsel's decision not to call a witness must be supported by an affidavit from the proposed witness. *People v. Enis*, 743 N.E.2d 1, 13 (Ill. 2000).

A federal court may not review a habeas petitioner's claim if the state court bases its judgment on a forfeiture which is "independent of the federal question and adequate to support the judgment." *Franklin*, 188 F.3d at 881. Such state grounds must rest upon "firmly established and

---

[3] Even if this claim was not untimely, it would nonetheless be dismissed for an additional reason. Because petitioner never raised this claim before every level of the state courts, it is procedurally defaulted. *Boerckel*, 526 U.S. at 845-46 (requiring a full round of appellate review in collateral proceedings).

8

regularly followed state practice." *Id.* The rule requiring affidavits is not only well-settled in Illinois case law, but it is also codified in the Illinois Post-Conviction Act. 725 ILCS 5/122-2 ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."); *see Spreitzer v. Schomig*, 219 F.3d 639, 647 (7th Cir. 2000) ("Illinois courts routinely dismiss claims for post-conviction relief that lack support in the record or supporting affidavits for the proposition that the petitioner's constitutional rights have been violated."). The fact that the appellate court reached the merits of the case in an alternative holding does not alter the above analysis. Even if a state reviewing court alternatively considers the merits of the federal question, the waiver still applies in full force as long as the reviewing court's decision rests on that independent and adequate state law ground. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.") (emphasis in original). Because the appellate court clearly found the issue waived, and only considered the claim on the merits in the alternative, petitioner's claim is dismissed.

A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Because petitioner makes no attempt to argue that any exception to the procedural default bar exists, the court cannot review this claim.

### 2. Claim I.D.18

Petitioner argues, in a single sentence and without explanation, that his trial counsel was ineffective for failing to object to the testimony introduced by the State concerning a statement given to police by Gonzalez. Respondent argues that this claim is procedurally defaulted because it was

9

not raised at any time in the course of his state court appeals. On direct appeal, Miranda argued that the prosecutor erred when he elicited hearsay testimony from Detective Bogucki concerning Gonzalez's location at the time of trial. However, as part of that claim on appeal, Miranda made clear that his counsel *did object* to the testimony. The instant claim, conversely, concerns some part of Detective Bogucki's testimony to which trial counsel failed to object. Because this claim cannot be the same claim raised on direct appeal, it is procedurally defaulted. Petitioner has made no argument which would support a finding of cause and prejudice, or actual innocence, here. Further, it is dismissed for failure to comply with Rule 2 of the Rules Governing Habeas Corpus Cases Under Section 2254, in that it fails to provide enough factual detail for the court to understand the claim.

### 3. Claim I.D.19

Petitioner argues that his trial counsel was ineffective for failing to object to the trial court's decision to allow into evidence People's Exhibit 19, a butcher knife. Because petitioner failed to raise this claim before any state court, it is procedurally defaulted. *Boerckel*, 526 U.S. at 845-46 (requiring a full round of appellate review in collateral proceedings). Nor has he made an attempt to argue that any basis for excusal, such as cause and prejudice or actual innocence, exists here.

### D. Merits

#### 1. Right to Testify

In claims I.A-B, petitioner argues that he was denied his right to testify in his own defense and his trial counsel was ineffective for improperly coercing him not to testify at trial. According to petitioner, he wished to testify and, if called to do so, would have explained that he suffered from alcoholism, had been drinking heavily on the day of the murder, and had a blackout that rendered incomplete his memory of the events in question. Petitioner contends that this testimony would have

10

bolstered a voluntary intoxication defense, and that the trial court would have instructed the jury accordingly. Petitioner maintains that his attorney told him that because petitioner was not fluent in English, the jury was likely to think he was an illegal alien and disbelieve his testimony. Petitioner claims that he wanted to testify but his attorney told him to answer "no" when asked by the trial court if he wanted to exercise that right.

In evaluating this claim, the court must determine whether the state appellate court's analysis was either "contrary to" or an "unreasonable application of" federal constitutional law. In order for petitioner to prevail on the ineffectiveness claim, the appellate court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), must have been objectively unreasonable. Under *Strickland*, petitioner must show that his counsel's performance fell below an objective standard of competence and that there is a reasonably probability that, but for counsel's error, the result of the trial would have been different. 466 U.S. at 690-695.

On post-conviction appeal, the state appellate court held that the record belied petitioner's claim that counsel improperly limited his right to testify, and that counsel could not have been ineffective in that regard.[4] First, the appellate court noted that the following question was asked during *voir dire*: "If David Miranda decides not to testify in his own behalf, would you hold it against him during your deliberation?" *State v. Miranda*, No. 1-00-3461, slip op. at 7-8 (Ill. App.

---

[4] It appears that the appellate court did not set out Miranda's underlying claim (i.e., his assertion that his constitutional right to testify was violated) as a separate claim. However, the court notes that the appellate court (in the context of ruling on the related ineffectiveness claim) clearly found that there was no support for Miranda's claim that he was coerced not to testify at trial. Out of an abundance of caution, therefore, the court notes that even if this court were to conduct its own analysis under *Rock v. Arkansas*, 483 U.S. 44, 49 (1987) (establishing that defendant has constitutional right to testify at trial), it would agree with the appellate court's conclusion that Miranda failed to put forward evidence sufficient to support his claim. *See Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991).

11

Ct. Oct. 31, 2002). Further, the appellate court relied on the following exchange:

> The Court: Mr. Miranda, you have a constitutional right to testify in this case . . . and your attorney, Mr. Sarley, in consultation with the other attorney, Ms. Kozlowski, has told me you do not wish to testify before the jury. I just want to make sure that that's a decision you make on your own. Is that correct, you do not wish to testify in this case?
>
> Miranda: Yes, your Honor.
>
> The Court: OK, that's fine.

*Id*. at 8. Finding no basis to credit Miranda's claim, the court reasoned that "Illinois courts have consistently upheld the dismissal of a post-conviction petition when the record from the original trial proceedings contradicts the defendant's claims." *Id*. Ultimately, the appellate court concluded that there was no compelling evidence that Miranda was coerced into not testifying, and this conclusion rendered his related ineffectiveness claim meritless.

The court cannot conclude that the state appellate court's conclusion was objectively unreasonable. Nor can the court conclude that Miranda's constitutional right to testify was violated. As the appellate court noted, a review of the trial transcript contradicts Miranda's current contention. Under oath, Miranda affirmatively and clearly waived his right to testify. He never informed the court that he wished to testify, or was otherwise being coerced. Because of this, the court concludes that the state appellate court's conclusion was reasonable, and Miranda's claim of coercion is meritless. *See Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991) (stating that a "barebones" assertion by defendant, even under oath, that his lawyer forbade him from testifying, without some other kind of substantiation, is insufficient to warrant further investigation into the claim). Because petitioner has not shown that he was coerced, his trial counsel cannot have been ineffective in this instance.

### 2. Lesser-Included Offense

Petitioner argues that trial counsel was ineffective because he did not challenge his conviction of attempted armed robbery, which petitioner alleges is a lesser-included offense of murder. The state appellate court found no prejudice from counsel's failure to raise this issue because there was no merit to the argument. Petitioner had been charged with: (1) intentional murder, (2) knowing murder, and (3) felony murder, and the jury returned a general verdict of guilt. In Illinois, the effect of a general verdict is to presume guilt on the most serious crime charged, which, in this case, is intentional murder. *State v. Miranda*, No. 1-00-3461, slip op. at 11 (Ill. App. Ct. Oct. 31, 2002) (citing *People v. Morgan*, 758 N.E.2d 813, 838 (Ill. 2001)). Because attempted armed robbery is *not* a lesser-included charge of intentional murder, there was no prejudice from his trial counsel's failure to raise this issue. *Id.* at 12 (citing *People v. Sample*, 761 N.E.2d 1199, 1211 (Ill. 2001).

The Illinois Appellate Court's decision was not an objectively unreasonable application of *Strickland*. In fact, the court's holding is entirely reasonable, given the controlling state law. Because attempted armed robbery is not a lesser-included offense of intentional murder, the appellate court was not unreasonable in concluding that any effort by trial counsel to challenge the attempted armed robbery conviction would have been futile. This claim is dismissed.

### 3. *Apprendi*

Petitioner claims that, under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), he was entitled to have a jury, and not the trial court, find the "brutal or heinous" aggravating factor beyond a reasonable doubt. The state appellate court held that *Apprendi* does not apply in this case. The trial court found, by proof beyond a reasonable doubt, that Miranda was eligible for the death

penalty because the murder was committed in the course of another felony. The trial court declined to impose the death penalty, and instead imposed an extended term of 70 years' imprisonment based upon its finding that the murder was accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty." *State v. Miranda*, No. 1-00-3461, slip op. at 15 (Ill. App. Ct. Oct. 31, 2002).[5] Because the sentence imposed (70 years) did not exceed the possible maximum (death or life imprisonment), *Apprendi* is not implicated. *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.")

The court agrees that the state appellate court's conclusion was correct. *White v. Battaglia*, 454 F.3d 705 (7th Cir. 2006) (rejecting *Apprendi* argument where defendant was death-eligible and court sentenced him to 80 years based on judge's finding that crime was "brutal or heinous"). For this reason, this claim fails.

### III. CONCLUSION

For all the foregoing reasons, David Miranda's petition for a writ of habeas corpus is denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 11, 2010

---

[5] Under Illinois law, the maximum sentence for first-degree murder was 60 years unless the offense was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." *State v. Miranda*, No. 1-00-3461, slip op. at 15 (Ill. App. Ct. Oct. 31, 2002); 730 ILCS 5/5-5-3.2(b)(2).